(Franklin County Court of Common Pleas.)

April Term 1900.

KISSENGER v. THE COLUMBUS MACADAM COMPANY et al.

---

Charge to jury in civil action for damages under the act of the Ohio legislature, passed April 19, 1898, commonly known as the anti-trust law—Construction of said act.

---

EVANS, J.

Charge to Jury:

Gentlemen of the Jury:

In February 1899 and prior thereto, the plaintiff was engaged, in Columbus, Ohio, in selling lime stone, for building purposes, and various other articles. In this action he seeks to recover damages for an alleged injury to his business of buying and selling building lime stone. He sets up, among other things, in his petition that in February 1899, the Columbus Macadam Company and certain persons and firms, engaged in quarrying and supplying such stone, entered into contracts whereby it was agreed that said company was to purchase all such stone to be supplied by said quarrymen to customers in the city of Columbus Ohio, and said quarrymen were not to sell such stone to any one in said city other than said company. That all or nearly all the quarrymen who furnished such stone to Columbus customers entered into said agreements; that in April, 1899, said company, and certain contractors, who were members of The Master Stone Mason's Association, entered into agreements whereby it was agreed that said contractors should purchase building lime stone from said company and no one else, and should use no such stone unless it was purchased of said company, and the company should not sell such stone to any one other than members of said association; and the company and contractors agreed upon and fixed the price at which such stone should be sold by said company. That all of said agreements were to be in force for one year.

That on July 31, 1899, said company caused its co-defendants to pass a certain resolution whereby it was resolved among other things that any person desiring to purchase stone from E. C. Kissenger, should order direct from said company, but state the stone was to be delivered by Kissenger, and payment therefor to be made direct to the company, and the latter to settle with Kissenger; that since said agreements with the quarrymen, and by reason thereof plaintiff has not been able to buy building lime stone from any of said quarrymen and said company refused to sell him except such only as he might need to supply members of said association at the price fixed as aforesaid, and he was to sell such stone to no one but members of said association; that upon such conditions the company sold him such stone till about August 1, 1899. That since the passage of said resolution of July 31, 1899, the members of said association by reason of said agreements and resolution have not been permitted to buy such stone of plaintiff, nor has he been permitted to sell the same to them; that this branch of his business is ruined and he has been compelled to quit the same.

The defendants deny material allegations of the petition.

This action is under an act of the legislature of Ohio, passed April 19, 1898; section 11 thereof provides among other things, that "any person who shall be injured in his business or property by any other person or corporation, or association, or partnership, by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any court having jurisdiction thereof * * * and may recover twofold the damages by him sustained.''

Section 1 of said act is as follows, "That a trust is a combination of capital, skill or acts by two or more persons, firms, partnerships, corporations,

or associations of persons or of any two or more of them for either, any or all of the following purposes:

1. To create or carry out restrictions in trade or commerce.

2. To limit or reduce the production or increase, or reduce the price of merchandise or any commodity.

3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

4. To fix at any standard or figure, whereby its price to the public or consumers shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce, intended for sale, barter, use or consumption in this state.

5. To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they shall bind or have bound themselves not to sell, dispose of, or transport any article or any commodity or any article of trade, use, merchandise, commerce, or consumption, below a common standard figure or fixed value, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity or transportation between them or themselves and others, so as to directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity, or by which they shall agree to combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected. Every such trust as is defined herein is declared to be unlawful, against public policy, and void.

By section 4 of this act it is provided that "any violator of either or all of the provisions of this act shall be and is hereby declared a conspiracy against trade," and by section 12 "that the word 'person' or 'persons' whenever used in this act shall be deemed to include corporations, partnerships and associations existing under or authorized by the state of Ohio or any other state, or any foreign country."

The plaintiff's action being based upon said act or statute, and being a civil action for damages, he cannot recover unless it shall appear from the evidence that in the year 1899, a trust existed for one or more of the purposes declared by said act to be unlawful, and alleged in plaintiff's petition as a basis of recovery, and that by reason of the existence of such trust for said alleged and unlaw-ful purpose or purposes, the plaintiff was, before the commencement of this action, to-wit: October 10, 1899, injured in his business of buying and selling lime stone for building purposes as in his petition alleged; and that the defendants are liable to the plaintiff for such injury, or that some of them is or are liable.

The several persons, and firms engaged in getting out and selling such stone who, for convenience are here designated as quarrymen and the said Macadam Company, and the latter and the several individual defendants, clearly had the lawful right to make any and all legitimate agreements for the honest promotion of their respective business, and carry out and perform the same.

The Columbus Macadam Company in the honest promotion of its business had the legal right to contract with the quarrymen to purchase all or any part of their output or to become their agent for selling the same, and the quarrymen equally, had the right to sell their output, or create the said Macadam Company their agent to sell their output, or any part thereof, and so, in the honest promotion of his business each of the Master Stonemasons had the right to contract on his own behalf with the Macadam Company to purchase the stone he might need in his business for the year and at an agreed price and such contracts are not necessarily illegal at common law or under the statute.

Each individual defendant had the legal right to conduct his business as contractor by the purchase of his material of such person or persons, as he deemed best, in the honest promotion of his own business.

They and others engaged in contracting for mason work, might lawfully form or join an association, for the promotion of their own business affairs, without violating the common law or the statute.

In so doing they would be but exercising that freedom and right with which all men are endowed by nature.

But persons may not associate together for the purpose of doing an unlawful act, or a lawful act by unlawful means.

The combination to be unlawful must be one within the terms of section 1 of said statute, and it must also be within the spirit or true meaning thereof. If not within both, the combination is not unlawful, though it may fall within the words of the statute. The statute is not designed to impair, or destroy the rights of anyone but to protect rights. Its purpose is to outlaw and prevent combinations for the purpose of monopoly, extortion, oppression, fraud, and the like—combinations to unite in a few persons the power to arbitrarily

destroy or impair legitimate competition in business and thereby increase or diminish, establish or fix, the price of a commodity or deprive persons unfairly or dishonestly of the right to engage in certain occupations or branches of business and the like.

All men are equal before the law. It is for the protection alike of all. It makes no distinction between men because of their business, occupation or employment. Every man's labor and skill are his own property, often they are the sole means of support for himself and family, and they are his only certain means in the accumulation of property. It is essential to the laborers' welfare and manhood that he and his labor shall be free; the laborer, as the employer, who frequently is only one step in the way of prosperity removed from the labor for wages, has the same need for freedom of action in his field of service.

Each may do whatever he will so long as he does not infringe upon the equal freedom and right of others. And it is the policy of the law to permit and encourage the multiplication of the numbers engaged in competition in business and in independent pursuits, and in the profits of production.

Such policy tends to an equality of fortunes among the people, thought to be so desirable in a republic, and to lessen the amount of pauperism and crime. A contrary policy must have a contrary effect. A society in which a few men control its business affairs, create monopolies and fix and control prices, stiffle competition and crush out individual enterprises and amass great fortunes in a few persons, is not desirable in a republic.

In determining in any case whether a combination is unlawful within said statute, the facts and the law must be considered and applied according to its true meaning. Clearly it was not the legislative intention that the law should be literally applied and enforced in every case that comes within the strict letter of the statute. Persons may combine their capital, or acts, or skill or any or all of them, and form a combination and not violate the law, though by so doing they may incidentally affect the price of a commodity, or impair or destroy the legitimate business of others or raise or lower the price of a commodity, or deprive others of employment, and the like; but these, or any, or all of them, are but the incidental results of legitimate business fairly and honestly conducted, and not the results of a combination designedly formed to wrongfully deprive others of their just rights.

The market price of an article manufactured by a number of different persons is a price fixed by buyer and seller in an open market, in the ordinary course of lawful trade and competition; but a price fixed arbitrarily by a combination of manufacturers or dealers, may be quite different from the market price. Such combinations are intended to stiffle competition, which is a stimulus of commercial transactions, and to substitute that of unconscionable gain whereby the participants become enriched at the expense of the consumer beyond what he ought legitimately to pay under a healthy spirit of competition in the business community.

Combinations to control prices and stiffle competition are against public policy, and void, because they have a mischevious tendency, and are injurious to the best interests of the state, which require that all business shall be open to competition; that the current prices of commodities shall be controlled by the law of supply and demand; that the laws of commerce shall flow in their accustomed channels, and not be diverted by combinations to control prices fixed by the arbitrary decision of interested parties.

The statute condemns combinations to raise or lower or fix the price of a commodity. The vice of a combination for the purpose of arbitrarily fixing the price of a commodity depends not upon the increase or reduction of price, but in the fact that the combination has the power to arbitrarily raise or lower the price, a power which a free people can not safely trust to the avarice and greed of those who conspire to exercise it for private gain. Monopolies have always been regarded as contrary to the spirit and policy of the common law, and are under the ban of the statute. An unlawful combination within section 1 of said act is by section 4 of said act declared to be a conspiracy against trade.

If persons conspire together to do an unlawful act, or to do a lawful act by unlawful means, then one knowing the purpose thereof, entering into such conspiracy, is bound by all the things said and done by any of their number in carrying out the purpose of such conspiracy, so long as he remains therein and does not withdraw.

Whether the members of the Master Stone Mason's Union, or Association, or persons who afterwards became members thereof, were associated together in a combination declared unlawful by section 1 of said act, is a question of fact for the jury, to be determined by them, upon the evidence and the law of the case.

Whether defendants, or any of them, were in an unlawful combination for any of the purposes alleged in plaintiff's petition are matters of fact to be determined by the jury upon the law and evidence.

If in the year 1899, and before the commencement of this action, the Col-

umbus Macadam Company entered into agreements with the quarrymen supplying lime stone for building purposes to the Columbus market, for the agency, or purchase, of their out put, or a part thereof, and also with the individual defendants and other persons, whereby these defendants and persons agreed to buy of said Macadam Company such lime stone; if their agreements were to be in force for a year more or less, if those with the quarrymen fixed the price to be paid to them for such stone, and if those with the individual defendants and other persons fixed the price to be paid by each of them to the said Macadam Company for such stone, then and in such case the court charges and directs the jury as follows:

First. If the Columbus Macadam Company, in the honest promotion of its business in good faith, made and entered into said agreements, it did no act unlawful at common law or by the statute, and is not liable in this action.

Second. If the Columbus Macadam Company made and entered into said agreements, not in the honest promotion of its business, but in order to combine with others for the purpose arbitrarily and by means of such agreements and combination to accomplish one or more of the following objects, to-wit: (a) to create or carry out restrictions in trade or commerce; (b) to limit the production of such stone; (c) to increase or reduce the price thereof to the public; (d) to prevent competition in the sale or purchase thereof, or (e) to fix at any figure whereby the price thereof to the public should be in any manner controlled or established, then and in such case the act of the Columbus Macadam Company was unlawful, and said combination was unlawful and a trust, within the meaning of said statute.

Third. If any or all of the individual defendants entered into said agreement in good faith and in the honest promotion of his or their business, then he or they, did no act unlawful at common law or by the statute, and cannot be held liable to the plaintiff.

Fourth. If any or all of the individual defendants entered into said agreement, not in the honest promotion of his or their business, but in order to combine with others for the purpose arbitrarily and by means of such agreement and combination to accomplish one or more of the following objects, to-wit: (a) to create or carry out restrictions in trade or commerce; (b) to limit the production of such stone; (c) to increase or reduce the price thereof to the public; (d) to prevent competition in the sale or purchase thereof, or (e) to fix at any figure whereby the price thereof to the public should be in any manner controlled or established,

then and in such case, such act of each individual defendant, so acting was unlawful, and said combination was unlawful and a trust within the meaning of said statute.

The burden of proof is upon the plaintiff to prove by a preponderance of the evidence the material facts constituting his cause of action, that he has been damaged, and the extent thereof, or circumstances from which damages may be inferred.

If you find for the plaintiff, you should allow an amount equal to two-fold the damages, you may find from the evidence he has sustained in his business of dealing in lime stone for building purposes in consequence of the acts of defendants declared unlawful by said statute, and alleged in plaintiff's petition as grounds of recovery, done before the commencement of this action, to-wit: October 10, 1899. For injury, if any, sustained by plaintiff for any wrongful acts of defendants done since October 10, 1899, plaintiff may bring a separate and independent action, and hence cannot recover in this action for such injury.

Evidence has been introduced tending to show the extent of plaintiff's business in lime stone for building purposes, and his profits therein prior to the alleged interruption of his business. This evidence may be considered by you together with the other evidence, upon the question of damages, in case you find in his favor. How much damage he sustained in consequence of defendant's alleged wrongful acts must be determined by the jury from the evidence. In determining what damages he has sustained you may consider, with the other evidence, what business in such lime stone he had done and was doing, for the purpose of fixing the amount he may be entitled to recover. But whether he would have continued, but for the acts complained of, to do the same amount of business or make the same profits or whether his business, in that particular would have diminished or increased in volume, or profits, are matters for the consideration of the jury. Past business and profits may not be the true measure of future or subsequent business and profits, but all the various contingencies by which such profits would probably be affected should be taken into consideration by the jury and allowed such weight as the jury, in the exercise of good sense and sound discretion, think them entitled to. You will determine from all the circumstances in evidence, what damage, if any, the plaintiff has sustained and your verdict will be for double his damages in case you find for him.

You may find for the plaintiff against all the defendants, or any one or more

of them, and for any one or more, or all of the defendants, against the plaintiff, as the evidence and the law may require or warrant.

Jury disagreed.